United States District Court
Southern District of Texas
**ENTERED**
February 28, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAMON EARL LEWIS,                    §
                                     §
          Plaintiff,                 §
VS.                                  §     CIVIL ACTION NO. 2:16-CV-124
                                     §
MCCONNELL UNIT, *et al*,             §
                                     §
          Defendants.                §

## MEMORANDUM AND RECOMMENDATION

Pending is the summary judgment motion of defendants Nancy Trevino and Jennifer Smith, officers with the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID), to dismiss Plaintiff's § 1983 claims that they denied Plaintiff access to the courts (D.E. 35). Plaintiff filed a response to the motion on January 26, 2017 (D.E. 41). As discussed more fully below, it is respectfully recommended that the motion be granted in part and denied in part.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331. Venue is appropriate in this district because Plaintiff is housed at the McConnell Unit in Beeville, Bee County, Texas.

## BACKGROUND

A jury convicted Plaintiff on four counts of aggravated sexual assault of a child and one count of indecency with a child. He filed a direct appeal and his conviction was upheld on appeal. *Lewis v. State*, No. 06-04-16-CR, 2004 WL 2584705 (Tex. App.—

Texarkana 2004, pet. struck)(located herein at D.E. 35-1 at pp. 48-57).  Plaintiff did not seek further direct or collateral review.

In early 2016 Plaintiff ordered copies of medical articles from the Houston Academy of Medicine Texas Medical Center Library.  The articles were "Medical Conditions with Genital/Anal Findings That Can Be Confused with Sexual Abuse," written by four medical doctors and "Healing of Nonhymenal Genital Injuries in Prepubertal and Adolescent Girls:  A Descriptive Study," also written by four medical professionals (filed under seal as Att. 4 to Defs. Orig. Answer, D.E. 18-1 at pp. 1-29).

When the articles arrived at the McConnell Unit on March 2, 2016, they were confiscated rather than delivered to Plaintiff.  The reason given for the confiscation was that the articles contained thirteen pages of information on the female genital area and contained several sexually explicit images (Att. 3 to Answer, D.E. 16-3 at p. 4).  The denial was signed by defendant Trevino (*Id.*).  Plaintiff appealed the denial of the material to the Director's Review Committee (DRC).  The DRC upheld the denial of the material, stating that the pages contained sexually explicit images that violated the Uniform Correspondence Rules found in Board Policy 03.91 (Att. 3 to Answer, D.E. 16-3 at p. 3).

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this complaint on April 18, 2016, alleging that the confiscation of the material violated his right of access to the courts and seeking relief under 42 U.S.C. § 1983.  He claims that he is entitled to use the material to file a state habeas action pursuant to Texas Code of Criminal Procedure article 11.073, which allows prisoners to present scientific evidence that was not available at the

time of trial to contradict scientific evidence relied on by the state at trial.  He seeks

injunctive relief, as well as nominal and punitive damages.

In their motion for summary judgment, Defendants contend the following:

(1) Plaintiff has failed to state a claim because his cause of action has not been lost or frustrated:

(2) The articles are not new scientific evidence and are not relevant to the testimony Plaintiff seeks to challenge;

(3) Because he has not attempted to file the writ with reference to the evidence, he cannot say his access to the courts has been denied based on the denial of delivery of the publications;

(4) The defendants are entitled to qualified immunity;

(5) To the extent Plaintiff is suing Trevino and Smith in their official capacities for nominal and punitive damages, they are entitled to Eleventh Amendment immunity;

(6) The harm of granting Plaintiff's request outweighs the harm to him if his request is denied.

Plaintiff argued the following in response:

(1) The articles do represent new scientific evidence and the evidence would have raised doubt about the medical testimony offered at trial;

(2) Because he has not even been permitted to view the articles, he is unable to construct an argument regarding whether the evidence in the articles is new or not;

(3) While it is true that he has not yet filed an application for habeas relief, he will only have one opportunity to do so and therefore must include all relevant evidence at the time he files it;

(4) Defendants are not entitled to qualified immunity or Eleventh Amendment immunity.

## APPLICABLE LAW

### A.  Standard of Review

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  *Id.*

Affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4).  *See also Cormier v. Pennzoil Exploration & Prod. Co*., 969 F.2d 1559, 1561 (5th Cir. 1992)(per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)(per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Milchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazen v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

**B. Qualified Immunity**

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).   To discharge this burden, a plaintiff must satisfy a two-prong test.   *Atteberry,* 430 F.3d at 251-252.   First he must claim that the defendant committed a constitutional violation under current law.   *Id.* (citation omitted).   Second, he must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complained.   *Id.*   While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.   *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### C.  Denial of Access to Courts and the Prison Correspondence Policy

Prisoners have a constitutionally protected right of access to the courts.   *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)).   The State must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance.   *Bounds*, 430 U.S. at 824-28.   However, prison officials have considerable discretion in providing legal resources to prisoners.   *Lewis*, 518 U.S. at 356. Restrictions on direct access to legal materials may be warranted when prison security is

6 / 22

involved.  *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).  But arbitrary limitations and restrictions are unconstitutional.  *Id.  See also Eason v. Thaler*, 14 F.3d 8, 9-10 (5th Cir. 1994) (allegations of a total denial of access to the prison law library for twenty-five days following a prison riot stated a constitutional violation).

To prevail on a denial of access to the courts claim under § 1983, a plaintiff must show that he suffered an "actual injury."  *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing *Lewis*, 518 U.S. at 351-54).  The plaintiff must identify a "nonfrivolous," "arguable" underlying claim that he has been unable to pursue.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Absent an actual injury through prejudice as a litigant in a pending litigation or inability to transmit legal documents, a plaintiff is not entitled to relief based on a claim of denial of access to the courts.  *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).

Plaintiff wants to file a habeas action based on Article 11.073 of the Texas Code of Criminal Appeals.  The statute provides that a court may grant habeas relief under some circumstances if a convicted person files a habeas action and indicates that relevant scientific evidence is currently available and was not available at the time of trial.  The convicted person must show that the evidence was not ascertainable through the exercise of due diligence before or during the trial and that the evidence would have been admissible under the Texas Rules of Evidence at the time of trial.  If the court makes those findings and also finds that had the evidence been presented at trial, on the preponderance of the evidence the person would not have been convicted, it may grant habeas relief.

Plaintiff argues that the journal articles which were seized would have enabled him to meet the requirements for filing under Tex. Code Crim. P. Art. 11.073. He would use the evidence to counter testimony at his trial from a registered nurse who was trained and certified as a sexual assault nurse examiner. The nurse testified that she examined the victim in the case and discovered abnormal "well-healed tears to the hymen." *Lewis*, 2004 WL 2574705 at *11 (D.E. 35-1 at p. 55). She further testified that she was able to distinguish between tears and naturally occurring notches in the hymen and that the tears she saw were consistent with sexual abuse. *Id.*

Plaintiff was denied delivery of the medical articles pursuant to Texas Department of Criminal Justice Board Policy 03.91, which sets forth rules for inmate correspondence. All publications received by inmates are subject to inspection by the Mail System Coordinators Panel (MSCP) with review by the Director's Review Committee (DRC). Defendant Trevino works in the TDCJ mail room and Defendant Smith serves on the DRC and also is a program supervisor with the MSCP (Mot. Sum. Jmt. Appx. 032; D.E. 35-1 at p. 33).

Among types of correspondence which may be rejected by the MSCP for content are publications containing sexually explicit images. The term "sexually explicit image" refers to the following:

> material in publications, photographs, drawings or any type of image, which depicts sexual behavior and is intended to cause sexual excitement or arousal by showing frontal nudity of either gender, including exposed female breast(s) with nipple(s) or areola(s), the genitalia or anus of either gender, or depicts sexual behavior from any vantage point. The chest of infants and pre-pubescent children are not considered breasts, unless further restricted by a treatment program policy.

BP-03.91.  Exceptions exist to the prohibition on sexually explicit images:

> Publications shall not be prohibited solely because the publication displays naked or partially covered buttocks.  Subject to review by the MSCP and on a case-by-case basis, publications constituting educational, medical, scientific, or artistic materials, including but not limited to, anatomy medical reference books, general practitioner references books or guides, National Geographic, or artistic reference material depicting historical, modern, or post modern era art, may be permitted . . .

BP-03.91 F.1.e.

Defendants assert that they are entitled to deny Plaintiff access to the medical articles because they violate the prohibition against material containing photographs of genitalia.  "[I]n determining the constitutional validity of prison practices that impinge upon a prisoner's right with respect to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological  interest." *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993)(discussing *Thornburgh v. Abbott*, 490 U.S. 401, 413-414 (1989) and *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  When a court is addressing a challenge to an action taken by prison officials rather than to a regulation, the same reasonableness standard is applicable to determine whether that action was constitutionally permissible.  *Id.*

## DISCUSSION

### A.  Preliminary Issues

Before addressing the core issue of whether the correspondence rule as applied to Plaintiff is reasonably related to a legitimate penological interest, Defendants' other arguments will be addressed.  Defendants assert that Plaintiff has failed to state a claim because his cause of action has not been lost or frustrated.  They appear to suggest that in

order to assert a cause of action, Plaintiff must first file the state habeas action without the evidence but with citations to the articles for the state court's consideration and then show that the writ was dismissed because he did not have access to the articles.

While it is true that Plaintiff has not yet attempted to file an application for habeas corpus relief under Tex. Code Crim. P. Art. 11. 073, a claim for denial of access to courts may be stated if it is alleged that systemic official action frustrates a plaintiff in preparing and filing a lawsuit at the present time. *Christopher*, 536 U.S. at 413 (2002). In addition, the simple ability to file a claim is not dispositive of the access question. Rather the right includes the ability to file a legally sufficient claim. *Morrow v. Harwell*, 768 F.2d 616, 623 (5th Cir. 1985). Moreover, Plaintiff will have only one opportunity to bring a state habeas action. *See* Tex. Code Crim. P. Art. 11.07 Sec. 4; *Ex Parte Sledge*, 391 S.W.3d 104, 105 (Tex. Crim. App. 2013)(applicant barred from bringing successive post-conviction writ application unless he can show newly discovered facts, a new legal basis that was unavailable at the time of his initial writ, or facts showing both a constitutional violation and actual innocence). Therefore, he must include all relevant evidence that he wishes the court to consider in his initial application. Accordingly, the fact that Plaintiff has not yet filed his state habeas does not lead to the conclusion that he has failed to state a claim that he is being denied the right to access the courts.

Defendants next argue that the articles are not new scientific evidence and are not relevant to the testimony Plaintiff seeks to challenge. However, it appears from the dates of the articles that they are new, in the sense that they were published after Plaintiff's December 2002 trial. It is unclear whether the articles offer new scientific evidence on

the testimony Plaintiff wishes to challenge because the testimony is not part of the record of this proceeding. But Plaintiff claims that the evidence would have directly contradicted the testimony of the sexual assault examiner and he wishes to use the evidence in an attempt to undermine the scientific conclusions the nurse testified to in his trial. A prisoner does not have to prove the materiality of materials sought as a predicate to the right to receive such material. *Petrick v. Maynard*, 11 F.3d 991, 996 (10th Cir. 1993). He need only make a general allegation of need sufficient to enable a prison to determine the legitimacy of his request. *Id.* Plaintiff has done that here.

Defendants also contend that the articles are irrelevant to any habeas action Plaintiff might bring under Article 11.073. The first article discusses medical conditions with genital or anal findings that are confused with sexual abuse. Defendants claim the article is irrelevant because it does not show that "injuries evidencing sexual assault are now disproven." (Mot. for Sum. Jmt., D.E. 35 at pp. 15-16). They claim that the second article, which discusses non-hymenal injuries is also irrelevant because the nurse made a finding of a hymenal injury. As discussed above, the testimony from the state court trial is not part of the record so it is impossible to say whether the articles will provide Plaintiff with the evidence he seeks.

However, the standard is not whether the articles are irrelevant, but whether Plaintiff needs the articles to make a "nonfrivolous," and "arguable" claim. *Christopher* 536 U.S. at 415. A frivolous claim is one which does not have a basis in fact or law. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). "The inmate must describe the underlying claim well enough to show that its 'arguable nature . . . is more than hope.'" *Id.*

11 / 22

at 769 (quoting *Christopher*, 536 U.S. at 416).   In *Brewster*, the inmate argued that without a particular law journal, his ability to draft pleadings was hindered and that he was attempting to formulate an appeal of his criminal conviction when the journal was confiscated.  *Id.*  The court found that because he did not identify any issue that he would have brought in his criminal appeal or other lawsuit if the law journal had not been taken from him that he had failed to state a claim.  *Id.*

Plaintiff in this case has described the specific claim that he wishes to bring in his state habeas case and has explained how he believes the articles will support his claim.  It cannot be said that his underlying claim is frivolous or that it is not at least arguable. Based on the foregoing, Plaintiff's claim should not be dismissed because he has not yet filed his state habeas or because the evidence he seeks is irrelevant.

### B.  Reasonable Relation to Legitimate Penological Interests

Prison regulations that encroach on fundamental constitutional rights are reviewed under the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  To evaluate the reasonableness of a prison regulation, courts look at four factors:  (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) Whether there are alternative means of exercising the right that remain open to the inmate; (3) What impact any accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and (4) The absence of ready alternatives.  *Turner*, 482 U.S. at 89-90.  Because Plaintiff is only complaining about the prison correspondence policy as it

applies to his receipt of the medical articles and not to the policy as a whole, the factors will be applied only to the decision regarding the articles. *Brewer*, 3 F.3d at 824.

### (1) Valid, Rational Connection

"[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90. The Supreme Court recognized that material coming into a prison could be circulated among inmates and has potential for coordinated disruptive conduct. *Thornburgh v. Abbot*, 490 U.S. 401, 412 (1989). The Court noted that prisoners could observe particular material in the possession of another prisoner and draw inferences about the prisoner's beliefs, sexual orientation or gang affiliations and cause disorder accordingly. *Id.*

These same concerns exist here. If Plaintiff were discovered by other inmates to have the articles with the images in his possession, it could cause a disruption among the inmates. Regardless of Plaintiff's intention with regard to possession of the articles, others might believe he was seeking sexual gratification from the images, which could potentially cause disorder. Defendants also point out that if Plaintiff obtains the images, there is a risk that they could be disseminated to other offenders for pornographic purposes. Accordingly, the first factor weighs in favor of denying Plaintiff possession of the of the articles.

### 2. Alternative Means of Exercising the Right

Where other avenues for exercising the right remain open to an inmate, a court should be particularly conscious of the "'measure of judicial deference owed to

corrections officials … in gauging the validity of the regulation.'" *Turner*, 482 U.S. at 90 (quoting *Pell v. Procunier*, 417 U.S.817, 827 (2000)).  Neither party has suggested any alternatives that would allow Plaintiff to file the 11.073 writ application with the evidence he seeks.  This factor weighs against denying Plaintiff possession of the articles.

### 3.  Impact of Accommodation

The Court in *Turner* noted that in the necessarily closed environment of a prison, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order.  *Id.*  The Court cautioned that "[w]hen accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."  *Id.*

A logical accommodation in this case would be to have TDCJ staff cut or redact the images from the articles and allow Plaintiff access to them in the law library or other secure or locked place for a reasonable period of time so that he could take notes on the content.  Defendants argue that to alter, redact or remove the images would be contrary to TDCJ policy and would "cause issues about what other images could be altered so an inmate may possess them" which in turn would cause unit and institutional disruption.

First, it is unclear to what policy Defendants are referring.  When Defendant Smith answered her interrogatories she stated that there are approximately thirty-one images imbedded in twenty-eight pages of documents and that pursuant to BP-03.91, images may not be altered, including but not limited to removing or changing the image with a computer software program or other means (Mot. Sum. Jmt. Appx. 033; D.E. 35-1 at p.

14 / 22

34).  A review of BP-03.91 shows only two references to altered photos.  The first is the definition of an "altered photo."  (Mot. Sum. Jmt. Appx. 002; D.E. 35-1 at p. 3).  The second reference is to a prohibition on offenders sending or receiving altered photos (Mot. Sum. Jmt. Appx. 010; D.E. 35-1 at p. 11).  This policy does not appear to prohibit the removal of images by prison staff after a determination has been made that an inmate is not allowed to view the images.

In similar circumstances, removal of objectionable material was ordered by a district court as a way to accommodate an inmate's need for scientific material when filing a habeas application.  In *Nunez v. Wilkerson*, 16 F.3d 1215 (5th Cir. 1994)(per curiam)(not selected  for publication), an inmate who was serving a sentence for intent to manufacture methamphetamine ordered a copy of the *Merck Index* and also a book entitled *Scientific Evidence in Criminal Cases* to assist him in preparation of his application for habeas relief.  His request for the *Merck Index* was denied because the book listed drug toxicity levels and contained chemical formulas that could be used in the manufacture of drugs.  The request for *Scientific Evidence* was denied because eleven pages contained detailed information regarding the manufacture of explosives and other weapons.  The inmate requested a copy of the book without the eleven pages, which was denied.  *Nunez* at *1.

The inmate filed a § 1983 action alleging that the failure to provide him with the materials denied him his right of access to the courts because he needed the books to

prepare his petition for habeas relief.  At the *Spears*[1] hearing, the defendants submitted to the court an affidavit describing the contents of the *Merck Index* and a description of the objectionable eleven pages from *Scientific Evidence*.   After examining the evidence, the district court granted summary judgment to the defendants on the refusal to deliver the *Merck Index*, but ordered that they deliver *Scientific Evidence*, minus the objectionable eleven pages.  *Id.*  The defendants did not appeal that order and it was not the subject of the Fifth Circuit's opinion, but the order does serve as an example of an accommodation ordered by a court in circumstances similar to those of the instant case.    The Fifth Circuit affirmed the decision to deny the *Merck Index* and the eleven objectionable pages of *Scientific Evidence*.  Id. at *2.

After reviewing the material Plaintiff has requested in this case, it is difficult to imagine that it would take a prison staff person more than a few minutes to cut the photos out of the articles and leave the text for Plaintiff to read.  Nor does it seem particularly burdensome to allow Plaintiff to review and take notes on the material only while he is in the law library or other secure place if there is a concern that taking the articles to his cell would create the potential for disorder.

Defendants argue that accommodating Plaintiff by cutting out the images would cause disruption because other inmates might seek the same type of accommodation. While this is a legitimate concern, any request for accommodation would occur in the context of prison correspondence policies that already exist.  Prison officials already review incoming publications and allow or deny delivery to inmates and inmates already

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

have a right to appeal any denial. Inmates may ask that images be removed or redacted as part of their appeal, but prison officials are under no obligation to grant the request unless they believe they need to do so to allow an inmate to assert a constitutional right, or that the correspondence policy otherwise allows it.

The existence of an accommodation indicates that the application of the broad correspondence policy to Plaintiff's situation is not reasonably related to legitimate penological interests. This factor weighs in favor of providing the articles to Plaintiff, although perhaps in a circumscribed manner.

### 4. Absence of Ready Alternatives

The absence of a ready alternative is evidence of the reasonableness of a prison restriction. *Turner*, 482 U.S. at 90. "By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* (citing *Block v. Rutherford*, 468 U.S. 576, 586 (1984). While prison officials are not required to set up and shoot down every possible method of accommodating an inmate's constitutional complaint, "if an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 90-91.

As discussed above, an alternative to denying Plaintiff the articles under the correspondence policy would be to have prison staff cut out or redact the images and allow Plaintiff to view them only while in the prison library or other secure place for a reasonable period of time. The existence of this "ready alternative" indicates that the

17 / 22

denial of these materials to Plaintiff under the specific circumstances at issue here is an exaggerated response to TDCJ's otherwise legitimate penological concerns.

For the reasons stated above, Plaintiff has stated a claim that Defendants' denial of these medical articles to him is a violation of his right of access to the courts. The particular denial of material at issue in this case is not reasonably related to legitimate penological interests.

### B. Qualified Immunity

Although Plaintiff has made a showing that the refusal to let him review the articles violates his constitutional right of access to the courts, Defendants have alleged that they are entitled to qualified immunity and are not liable in their individual capacities for nominal or punitive damages. To overcome the allegations of qualified immunity, Plaintiff must first show that the individual defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complains.

As discussed above, Plaintiff has shown that it was a violation of his right of access to the courts for Defendants to not allow him to see the medical articles. However, he has not made a showing that the individual defendants' actions were objectively unreasonable, given the prohibition against sexually explicit material in the correspondence rules. When the articles arrived in the prison mailroom, Defendant Trevino, who worked in the mail room, denied Plaintiff access to the articles because they contained photographs of children's genitalia. It was objectively reasonable for her

to do so under BP-03.91 because she had no idea that Plaintiff intended to use them as part of a court filing.  Therefore, she is entitled to qualified immunity.

When Plaintiff appealed the denial to the DRC, he claims that he explained in writing that the denial of the medical articles would violate his constitutional right of access to the courts.[2]  His appeal was denied and Defendant Smith maintained in her interrogatories that inmates may not possess sexually explicit images of children under any circumstances (D.E. 35-1 at p. 34).

The parameters of an inmate's right of access to the courts are not as clear as some of the other civil rights accorded to incarcerated people.  In *Morrow*, the Fifth Circuit noted that the principles related to the right of access to the courts "suffer from a lack of internal definition and prove far easier to state than to apply."  *Morrow*, 768 F.2d at 623. While it is clearly established that prisoners have a constitutional right to access the courts, the accommodation of that right in Plaintiff's situation was not clear because of the conflict between the correspondence rules and the right of access.  Given the existence of the correspondence rules and Defendant Smith's representation that she was following the rules, it cannot be said that her actions were objectively unreasonable. Accordingly, she is entitled to qualified immunity.

---

[2] No copy of Plaintiff's written appeal of the decision is included in the record, but Defendant Smith, the MSRP supervisor and a member of the DRC, stated in her interrogatories that Plaintiff did appeal the denial (D.E. 35-1 at p. 28).  Defendant Smith further stated that she neither read nor considered Plaintiff's appeal (D.E. 35-1 at p. 33).

19 / 22

### C.  Eleventh Amendment Immunity

Defendants move for summary judgment on any claims filed against them in their official capacities for monetary damages.  It is well established that the Eleventh Amendment bars a suit for money damages against a state or state agency.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  An action against a state official in his or her official capacity is considered an action against the State itself and thus barred by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended Eleventh Amendment immunity to TDCJ officers and officials acting in their official capacities.  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Accordingly, to the extent Plaintiff is suing Defendants Trevino and Smith in their official capacities for money damages, his claims are barred by the Eleventh Amendment and should be dismissed.

### D.  Injunctive Relief

Petitioner also seeks an injunction from the court ordering TDCJ to provide him with the medical articles.  An exception to sovereign immunity exists when a plaintiff seeks prospective injunctive relief.  "'Under *Ex Parte Young*, a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'"  *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)(quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) and citing *Frew ex rel. Frew v. Hawkins*, 504 U.S. 431, 437 (2004).

As discussed at length above, an order for Defendants to remove the objectionable images from the medical articles and allow Plaintiff to see and take notes on them while in the law library would preserve Plaintiff's right of access to the courts while not creating disorder or unduly burdening TDCJ officials. Removal of the images prior to allowing Plaintiff to view them would also address Defendants' assertion that his viewing of the images would do a disservice to the public because Plaintiff is a convicted child sex offender.

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be denied on the issue of prospective injunctive relief. The parties should proceed to trial on the issue of whether legitimate, penological interests support the denial of the articles to Plaintiff, or whether TDCJ should be ordered to provide the articles to Plaintiff in their current form, or in a more restricted form.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment (D.E. 35) be GRANTED in part and DENIED in part. Defendants Smith and Trevino are entitled to qualified immunity. Summary judgment should be entered in their favor and Plaintiff's claims against them in their individual capacities for nominal and punitive damages should be DISMISSED. Summary judgment should be entered also for Defendant TDCJ insofar as Plaintiff is seeking nominal and punitive damages against the agency. Summary judgment should be DENIED on Plaintiff's claim for injunctive relief against the Defendants in their official

capacities. The parties should proceed to trial on the issue of whether Plaintiff is entitled to injunctive relief, and if so, what form it should take.[3]

Respectfully submitted this 28th day of February, 2017.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).

---

[3] If Defendants provide a reasonable accommodation to Plaintiff as outlined, then the request for injunctive relief will be moot.